**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Action No.: 7:17-cr-00407-JMC-1 |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| CNIDARIAN KENDRELL ANTWON ) | |
| WILKINS, ) | |
| ) | |
| Defendant. ) | |
| ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ ) | |

Defendant Cnidarian Kendrell Antwon Wilkins ("Defendant") is a prisoner currently serving a sentence of 108 months in the Federal Bureau of Prisons ("BOP"). (*See* ECF No. 43.)

This matter is before the court pursuant to Defendant's Emergency Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A).[1] (ECF No. 61 at 1.) Specifically, Defendant asks this court "to grant [] placement into home confinement for the balance of Defendant's sentence" to protect him from the spread of COVID-19 at the Federal Correctional Institution in Butner, North Carolina ("FCI Butner"). (*Id.* at 1, 7.)

For the reasons set forth below, the court **DENIES WITHOUT PREJUDICE** Defendant's Emergency Motion for Compassionate Release.

### I.   RELEVANT BACKGROUND TO PENDING MOTION

On May 9, 2017, the Grand Jury indicted Defendant on one count of felon in possession of a firearm in violation of 18 U.S.C. § 922 and one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841. (ECF No. 2 at 1-2.)

---

[1] "Motions under th[is] section have been called 'motions for compassionate release.'" *United States v. Pack*, No. 2:17-cr-20002-10, 2020 WL 2174447, at *1 (W.D. Tenn. May 5, 2020) (citation omitted). "'The compassionate release provisions were . . . intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *Id.* (citation omitted).

1

On August 17, 2017, Defendant pleaded guilty to both counts of the Indictment. (*See* ECF No. 33 at 1.) The court sentenced Defendant to a term of imprisonment of 108 months in the BOP followed by three (3) years of supervised release on March 14, 2018. (ECF No. 43.) On March 13, 2019, Defendant filed a Motion for Reconsideration, which the court denied on May 2, 2019. (ECF Nos. 46, 54.)

On January 30, 2020, the World Health Organization ("WHO") declared that an outbreak of a new coronavirus, SARS-CoV-2, was a Public Health Emergency of International Concern and further declared it was a pandemic on March 11, 2020.[2] *WHO*, https://www.who.int/news-room/detail/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov) (last visited Jan. 5, 2021). As of January 15, 2021, there are more than 23.4 million reported cases in the United States and more than 93.6 million reported cases of COVID-19 worldwide, resulting in more than 391,098 deaths in the United States and 2,003,885 deaths worldwide. *COVID-19 Dashboard*, Ctr. for Sys. Sci. & Eng'g at Johns Hopkins Univ., https://coronavirus.jhu.edu/map.ht

---

[2] "COVID-19 is the disease caused by a new coronavirus called SARS-CoV-2. WHO first learned of this new virus on 31 December 2019, following a report of a cluster of cases of 'viral pneumonia' in Wuhan, People's Republic of China." *WHO*, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/coronavirus-disease-covid-19 (last visited Jan. 5, 2021). The COVID-19 virus spreads "between people, mainly when an infected person is in close contact with another person." *WHO*, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/coronavirus-disease-covid-19-how-is-it-transmitted (last visited Jan. 5, 2021). The COVID-19 virus "can spread from an infected person's mouth or nose in small liquid particles when they cough, sneeze, speak, sing or breathe heavily." *Id*. Additionally, "[c]urrent evidence suggests that the main way the virus spreads is by respiratory droplets among people who are in close contact with each other." *Id*. The COVID-19 virus "can also spread after infected people sneeze, cough on, or touch surfaces, or objects, such as tables, doorknobs and handrails." *Id*. "Other people may become infected by touching these contaminated surfaces, then touching their eyes, noses or mouths without having cleaned their hands first." *Id*. "Laboratory data suggests that infected people appear to be most infectious just before they develop symptoms (namely 2 days before they develop symptoms) and early in their illness," but "[p]eople who develop severe disease can be infectious for longer." *Id*.

ml (last visited Jan. 15, 2021). As of January 14, 2021, "[t]here are 4,718 federal inmates and 2,049 BOP staff who have confirmed positive test results for COVID-19 nationwide." *COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 15, 2021). At FMC Butner where Defendant is currently housed, one (1) inmate and nine (9) staff members are dealing with confirmed active COVID-19. *Id.*

Defendant filed the instant Motion on August 3, 2020. (ECF No. 61.) Defendant thereafter was appointed counsel who supplemented his *pro se* motion with a Memorandum in Support of Defendant's Motion on September 1, 2020. (ECF No. 69.) In his Motion, Defendant urges the court to grant compassionate release and subsequent placement into home confinement for the balance of his sentence. (ECF No. 61 at 1, 7.) Defendant contends the court should grant him compassionate release because, as a twenty-nine (29) year-old African-American male, he is at "increased risk of serious complications or death from COVID19." (ECF No. 69 at 1.) The Government filed a Brief opposing Defendant's request on September 2, 2020, asserting that Defendant "does not meet any requirements for a reduction based on extraordinary and compelling circumstances due to health issues." (ECF No. 72 at 1.) The Government further contends that Defendant "presents a danger to the community based on his record." (*Id.*)

## II.     JURISDICTION

The court has jurisdiction over this matter pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), which provides a federal district court sentencing judge with jurisdiction "to consider a defendant's motion for reduction of sentence based on extraordinary and compelling reasons when the defendant has exhausted his administrative remedies." *United States v. Kubinski*, NO. 3:93-CR-28-1H, 2020 WL 2475859, at *2 (E.D.N.C. May 13, 2020).

3

### III.     LEGAL STANDARD

"A sentencing court does not have inherent authority to modify an otherwise valid sentence." *United States v. Pack*, No. 2:17-cr-20002-10, 2020 WL 2174447, at *1 (W.D. Tenn. May 5, 2020) (citation omitted). "The authority to resentence a defendant is limited by statute." *Id.* (citation omitted). "As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Feiling*, Crim. No. 3:19cr112 (DJN), 2020 WL 1821457, at *4 (E.D. Va. Apr. 10, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile." *Feiling*, 2020 WL 1821457, at *4 (citation omitted).  *See also Pack*, 2020 WL 2174447, at *2 ("A defendant may exhaust his administrative remedies in one of two ways: (1) by exhausting his "administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) upon "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." (citing 18 U.S.C. § 3582(c)(1)(A)); *United States v. York*, Nos. 3:11-cr-76, 3:12-cr-145, 2019 WL 3241166, at *5 (E.D. Tenn. July 18, 2019) ("Other district courts have recognized that the language of § 3582(c)(1)(A), as amended by the First Step Act, requires the defendant to file an administrative request with the BOP 'and then either exhaust administrative appeals or wait thirty days after submitting his request to the BOP.'"

(citation omitted)). Moreover, "[b]efore granting compassionate release, the Sentencing Commission directs courts to consider when a defendant poses 'a danger to the safety of any other person or to the community[, as provided in 18 U.S.C. § 3142(g)].'"[3] *United States v. Gomez*, Crim. Action No. 2:18-CR-01435-1, 2020 WL 2061537, at *1 (S.D. Tex. Apr. 29, 2020) (quoting U.S.S.G. § 1B1.13).

## IV.   ANALYSIS

Defendant notes that he exhausted the BOP Administrative Remedy process after the warden at FCI Butner denied his request for compassionate release on June 18, 2020. (ECF No. 61 at 1.) However, this does not constitute exhaustion, as the warden's June 18, 2020 response clearly advises Defendant of his right to appeal the denial. (ECF No. 61-3 at 2.) Regardless, Defendant appears to comply with the requirements of § 3582(c)(1)(A), as amended by the First Step Act. He filed his Motion for Compassionate Release on August 3, 2020, more than thirty (30) days from the receipt of his administrative remedy request by the warden of FCI Butner on June 16, 2020. (ECF No. 69 at 12.) The Memorandum in Support contends that Defendant's Motion is properly before the court because "[t]hirty days have passed since Mr. Wilkins's request was received by the warden of his facility." (*Id.*) However, courts are split over options regarding the exhaustion requirement. (*See, e.g.*, *United States v. Church*, Crim. Action No. 5:17-CR-00044-KDB-DSC-2, 2021 WL 134693, at *2 (W.D.N.C. Jan. 13, 2021)("…given the scale of the COVID-19 pandemic and the complexity of the situation in federal institutions, it is even more important that Defendant first attempt to use the BOP's administrative remedies.").

---

[3] "In determining whether a defendant is dangerous to the safety of others or the community, 18 U.S.C. § 3142(g) assesses: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *United States v. Ennis*, EP-02-CR-1430-PRM-1, 2020 WL 2513109, at *7 (W.D. Tex. May 14, 2020) (citing 18 U.S.C. § 3142(g)).

Even if the court waived the exhaustion requirement, Defendant's present circumstances would not merit compassionate release. Defendant cannot demonstrate "extraordinary and compelling reasons" for his release.

Defendant moves the court to reduce his sentence to home confinement because "COVID-19 is an extraordinary and compelling circumstance that did not exist at his sentencing." (ECF No. 61 at 7.) Additionally, the Memorandum in Support portends that Defendant's "personal history and characteristics make him particularly vulnerable to Covid-19 [sic] and put him in grave danger in a prison environment during this pandemic." (ECF No. 69 at 12.) Upon review, the court observes that "a heightened susceptibility to COVID-19 may present extraordinary and compelling reasons for a sentence reduction." *United States v. Allen*, Crim. No. RDB-14-0411, 2020 WL 3868999, at *2 (D. Md. July 9, 2020) (citation omitted). However, Defendant did not provide specific documentation establishing a medical condition rendering him uniquely susceptible to COVID-19 in his Motion or in the Memorandum in Support. (ECF Nos. 61 at 7, 11; 69 at 11-15.) Additionally, the BOP assessed Defendant as a "healthy, CARE Level 1" inmate. (ECF No. 61-3 at 2.) The BOP describes CARE Level 1 inmates as "less than 70 years of age [,] [] generally healthy [,] [and] have limited medical needs that can be easily managed by clinician evaluations every 6–12 months." BOP, Care Level Classification for Medical and Mental Health Conditions or Disabilities 4 (May 2019), https://www.bop.gov/resources/pdfs/care_level_classification_guide .pdf. Further, the Government notes that "[a] review of [Defendant's] BOP medical records indicates no health issues except for a rash on one of his hands/arm." (ECF No. 72 at 8.)

In this regard, the court concludes that Defendant's Motion and the Memorandum in Support expressly provide no basis to find an extraordinary and compelling reason for his release. *See United States v. Taylor*, Crim. No. ELH-13-269, 2020 WL 3447761, at *6 (D. Md. June 23,

6

2020) ("Fear of contracting the novel coronavirus while incarcerated is not sufficient reason for granting compassionate release" absent individual special circumstances.). Additionally, because there are currently only ten (10) confirmed active cases of COVID-19 at FMC Butner, the court is further persuaded that Defendant "is not currently at a particularly heightened risk of contracting COVID-19." *United States v. Hurtt*, CRIM. NO. JKB-14-0479, 2020 WL 3639987, at *2 (D. Md. July 6, 2020). *See COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last visited Jan. 15, 2021).

Finally, the factors enumerated in 18 U.S.C. 3553(a) weigh against Defendant's release. Defendant does not discuss these factors in his Motion, but Defendant's appointed counsel addresses them in the Memorandum in Support. (ECF No. 69 at 16–17.) Counsel contends that Defendant is "not violent, and there were no allegations of violence during this offense." (*Id.* at 16.) Counsel also contends that Defendant's "BOP disciplinary records contain no serious infractions, which persuades courts assessing community danger" and concludes that while Defendant's "drug offense was serious, that alone is not enough to label him a community danger." (*Id.* at 16-17.)

Defendant has served approximately thirty-four (34) months, or thirty-one (31) percent of his term of 108 months. (ECF No. 43 at 2.) Moreover, Defendant committed the crimes he is currently incarcerated for despite being previously convicted of similar charges. Defendant was convicted of "Possession with Intent to Distribute Schedule I, II, III or other Substances" in July 2009. (ECF No. 39 at 7.) Defendant was subsequently convicted of "Possession with Intent to Distribute Marijuana" in July 2013 and March 2014. (ECF No. 39 at 8.) Given Defendant's pattern of committing crimes while out of custody, the court finds that Defendant's criminal history counsels against his release.

7

## V.     CONCLUSION

Upon careful consideration of the entire record, the court hereby **DENIES WITHOUT PREJUDICE** Defendant's Emergency Motion for Compassionate Release (ECF No. 61).

**IT IS SO ORDERED.**

United States District Judge

January 20, 2021
Columbia, South Carolina